STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1375


BLANE GUILLORY

VERSUS

RACHEL CEFALU GUILLORY


**********


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-C-6411-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and
Shannon J. Gremillion, Judges.


AFFIRMED.


Howard C. Dejean
111 North Court Street
Opelousas, LA 70570
Telephone: (337) 942-1149
COUNSEL FOR:
    Plaintiff/Appellee - Blane Guillory


Errol L. Cormier
315 South College Road, Suite 101
Lafayette, LA 70503
Telephone: (337) 237-2100
COUNSEL FOR:
    Defendant/Appellant - Rachel Cefalu Guillory

**THIBODEAUX, Chief Judge.**

Defendant-appellant, Rachel Cefalu Guillory, appeals the trial court's judgment which denied her request for final periodic spousal support and an extension of interim periodic spousal support from her ex-spouse, Blane Guillory. She asserts that the trial court manifestly erred in finding her partially at fault in the dissolution of the marriage and that she failed to establish good cause for an extension of the interim support obligation.

The judgment of the trial court is affirmed.

## I.

### ISSUES

1. Did Mrs. Guillory establish the requisite freedom from fault necessary to establish entitlement to final periodic spousal support?

2. Did Mrs. Guillory establish "good cause" for a post-divorce extension of Mr. Guillory's obligation to pay interim periodic spousal support?

## II.

### FACTS

Blane Guillory and Rachel Cefalu Guillory were married on August 5, 2006. They were married approximately seventeen months before Mr. Guillory moved out of the matrimonial domicile in December of 2007 and filed a Petition for Divorce. Mrs. Guillory subsequently filed a Rule for Spousal Support, seeking both interim and final periodic spousal support.

Mr. Guillory is a self-employed businessman who was the family's primary income source. Mrs. Guillory, who attended college for two years pursuing a degree in business, did not work during the marriage except for a brief time in 2006 when she worked at one of Mr. Guillory's businesses performing typical clerical

duties in addition to handling the business's payroll. She earned a nominal salary. Mrs. Guillory's work experience prior to that was comprised of bartending and waiting tables. Also, in the year preceding her marriage, she worked for a period of approximately five months in Iraq, in a clerical capacity, at a recreational facility used by this country's military troops. Her salary was $3,000.00 per month. However, due to hazard pay she received, she earned $8,000.00 - $11,000.00 per month during that period.

After Mr. Guillory moved out of the matrimonial domicile, he made cash deposits to Mrs. Guillory's checking account for a period of approximately three months. The amounts are not made clear in the record. Mr. Guillory also gave Mrs. Guillory a lump sum payment of $25,000.00 for the purpose of assisting her in establishing a new residence if she wished.

The matrimonial domicile, the separate property of Mr. Guillory, continued to be occupied by Mrs. Guillory for approximately three months after he moved out. During that time, Mr. Guillory continued to pay all of the expenses associated with maintenance of the home. He also continued to pay the credit card bills created by Mrs. Guillory after the separation. Those bills included costs for fuel for the Mercedez-Benz vehicle that she drove, as well as for her food and entertainment. In March of 2008, Mrs. Guillory moved to what was described as an "upscale" apartment. She returned the Mercedes-Benz to Mr. Guillory a few months later, in May of 2008.

Mrs. Guillory subsequently filed a motion for an extension of interim periodic spousal support, recognizing that Mr. Guillory's obligation to provide her with interim support could be terminated once the divorce judgment was rendered. The trial on the merits of the divorce and Mrs. Guillory's spousal support requests

was held on August 4, 2008. The trial court granted the divorce judgment and denied Mrs. Guillory's requests for final periodic spousal support and her request for an extension of interim periodic spousal support. Mrs. Guillory appeals.

III.

**LAW AND DISCUSSION**

A spouse who can prove a need for financial support and no fault in the dissolution of the marriage prior to the filing of marriage termination proceedings may be entitled to receive interim periodic support or final periodic support. La.Civ.Code arts. 111 and 112. In this case, Mrs. Guillory received interim periodic spousal support for a period pending termination of the marriage. The interim periodic support she received prior to the rendition of the judgment of divorce is not the subject of this appeal. Rather, Mrs. Guillory seeks a reversal of the trial court's determination that she is not entitled to final periodic spousal support post-divorce and that she was not entitled to an extension of interim spousal support for a period of four months as she had requested.

The trial court's determinations on these domestic relations issue are to be given great deference on appellate review. *Pearce v. Pearce*, 348 So.2d 75 (La.1977); *see also Wolff v. Wolff*, 07-332 (La.App. 3 Cir. 10/3/07), 966 So.2d 1202. Therefore, the trial court's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Wolff*, 966 So.2d 1202.

### *Final Periodic Spousal Support*

Louisiana Civil Code Article 112 requires that a spouse seeking final periodic support as a consequence of a divorce prove his or her freedom from fault in the dissolution of the marriage. That spouse must prove also his or her need for the support and the other spouse's ability to provide such support. Article 112(A) states:

> A. When a spouse *has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support* in accordance with Paragraph B of this Article.

(Emphasis added). "'Fault' contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities." *Goodnight v. Goodnight*, 98-1892, p. 3 (La.App. 3 Cir. 5/5/99), 735 So.2d 809, 812 (quoting *Guillory v. Guillory*, 626 So.2d 826, 829 (La.App. 2 Cir. 1993)). Those spousal obligations include fidelity, support, and assistance. La.Civ.Code art. 98. The contemplated misconduct rises to the level of fault when it is of a "serious nature" and is also "an independent[,] contributory or proximate cause of the separation." *Pearce*, 348 So.2d at 77. The behaviors should be of the nature that "compel a separation because the marriage is unsupportable." *Allen v. Allen*, 94-1090, p. 13 (La. 12/12/94), 648 So.2d 359, 363 (quoting *Brewer v. Brewer*, 573 So.2d 467, 469 (La.1991)).

Because Louisiana's statutory law does not define acts or omissions constituting fault sufficient to deny final periodic spousal support, criteria developed through prior jurisprudence is relied upon to make such a determination. *Allen*, 648 So.2d 359. These include those grounds formerly providing a basis for legal separation: "adultery, habitual intemperance, excesses, cruel treatment or outrages, making living together insupportable, and abandonment." *Id*. at 362.

Mrs. Guillory denies bearing any fault in the dissolution of the marriage, asserting that the evidence relied upon by the trial court to make this determination was insufficient to serve as a basis for denying her claim for final support. She claims that the trial court essentially found that her behavior constituted habitual intemperance or excesses, cruel treatment, or outrages, but she contends the behaviors mentioned do not rise to that level. Specifically, she was accused of arguing fairly regularly with Mr. Guillory; locking him out of the home on occasion when he arrived home late at night; staying away from home for days at a time, without answering Mr. Guillory's calls to her mobile phone to advise him of where she was or when she planned to return; and purposely delaying the couple's planned wedding anniversary trip by arriving home late and angrily failing to prepare to leave as had been previously scheduled.

Mrs. Guillory defends her actions by stating that many of the couple's arguments were akin to mere "fussing" or "bickering" and offer insufficient support for a finding of fault. In addition, she claims that any instances of her locking Mr. Guillory out of the home were due to his staying out late at night two to three times a week, drinking alcohol, and that it was not unreasonable for her to respond to this behavior as she did.

We do not find that Mrs. Guillory satisfied her burden of establishing her freedom from fault, and we find no error in the trial court's determination that Mrs. Guillory bore fault in the dissolution of the marriage. Mr. Guillory offered contradicting explanations for the acts and omissions mentioned by the trial court in its ruling as a basis for concluding that she shared in the fault leading to the breakup of the marriage. For example, he denied that he was out late drinking and testified that he often met with clients after business hours but typically returned home before

11:00 p.m. He denied that he returned home drunk or that she had cause to lock him out of the home on those nights. Mr. Guillory also testified that Mrs. Guillory simply seemed generally unhappy in the marriage and exhibited a foul mood, which he opined was perhaps due to their age disparity and her dislike for his time spent away from her dealing with his work or other family obligations. Mrs. Guillory, on the other hand, did not contradict Mr. Guillory's account of her multiple instances of "disappearing" for days at a time and purposely avoiding any contact with Mr. Guillory during that time. She did not contradict his description of her exhibiting generally negative behavior nor her exhibition of an unhappiness with the marriage.

Although we recognize that a spouse should not be deprived of permanent spousal support simply because he or she is not totally blameless for the dissolution of the marriage, in light of the conflicting testimony and facts and circumstances of this case, we are satisfied that the trial court's finding that the wife was not free from fault is not manifestly erroneous. *See Pearce*, 348 So.2d 75. Therefore, since the necessary element of freedom from fault was not successfully established, we find no error in the trial court's judgment denying Mrs. Guillory's claim for final periodic spousal support.

### *Extended Interim Spousal Support*

Louisiana Civil Code Article 111 provides that interim periodic spousal support may be awarded pending a divorce proceeding or thereafter. Article 113 of the Civil Code further explains this award:

> Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage, *which award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce.* If

6

> a claim for final spousal support is pending at the time of
> the rendition of the judgment of divorce, the interim
> spousal support award shall thereafter terminate upon
> rendition of a judgment awarding or denying final spousal
> support or one hundred eighty days from the rendition of
> judgment of divorce, whichever occurs first. *The
> obligation to pay interim spousal support may extend
> beyond one hundred eighty days from the rendition of
> judgment of divorce, but only for good cause shown.*

(Emphasis added).

At issue is the trial court's denial of Mrs. Guillory's request for a four-month extension of the interim spousal support obligation. We find that Mrs. Guillory failed to establish "good cause" for the extension and find no error in the trial court's ruling.

> Whether "good cause" exists for the extension of interim
> support must be determined on a case-by-case basis. The
> disability of the claimant spouse or a situation where a
> claimant spouse is prevented from seeking employment
> due to circumstances beyond his or her control might be
> "good cause" to extend interim support.

*Piccione v. Piccione*, 01-1086, pp. 9-10 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, 433.

As stated earlier, "the claimant-spouse bears the burden of proving necessitous circumstances or insufficient means for his or her maintenance" when seeking spousal support. *Goodnight*, 735 So.2d at 814. This applies to interim spousal support claims as well, among other factors that are also to be considered. La.Civ.Code art. 111; *Piccione*, 824 So.2d 427. In *Goodnight*, this court recognized that the following factors were a proper consideration when determining a need for spousal support: "income, means, earning capacity, assets, the liquidity of the assets, [his or] her financial obligations, [his or] her health and age and any other circumstances deemed relevant by the court." *Id*. Earning capacity alone, we stated, is not a sufficient basis to deny a request for spousal support, and we agreed with other courts that the claimant-spouse should not be required, necessarily, to accept

7

any type of employment immediately after a divorce. *Id.* The trial court should be mindful to consider any difficulties in finding employment suitable for the "spouse's age, training, and ability." *Id.* (citations omitted). These considerations continue to be relevant when determining whether good cause exists for a requested extension of the interim periodic spousal support obligation.

In this case, the record supports the trial court's judgment denying Mrs. Guillory's request for an extension of this support. Mrs. Guillory completed approximately two years of college coursework, successfully worked in clerical/office environments after leaving college, and is a licensed bartender with experience also as a waitress. The facts also reveal that she had been voluntarily out of the workforce for only one year at the time the divorce action was instituted. There was no evidence presented of her current financial status, i.e., necessitous circumstances, other than her unemployed status. Nevertheless, at the time of the divorce hearing, Mrs. Guillory testified that she had not seriously undertaken a job search since the couple's separation, offering no proof of her having faced any impediments to finding suitable employment. Mrs. Guillory is in her mid-20s and did not establish at trial any compelling reason of any significance or gravity that would make it inequitable to deny an extension of such support. *See Piccione*, 824 So.2d 427.

IV.

**CONCLUSION**

The trial court's judgment denying final periodic spousal support and an extension of interim periodic spousal support to defendant-appellant, Rachel Cefalu Guillory, is affirmed. All costs of this appeal are assessed to Rachel Cefalu Guillory.

**AFFIRMED.**

8