988 So.2d 832 (2008)
ASTORIA ENTERTAINMENT, INC.
v.
Edward J. DeBARTOLO, Jr., DeBartolo Entertainment Louisiana Gaming, Inc., Hollywood Casino Corporation, Robert Guidry, Treasure Chest Casino, L.L.C., et al.
No. 2007-CA-1519.
Court of Appeal of Louisiana, Fourth Circuit.
June 27, 2008.
*833 Henry L. Klein, New Orleans, LA, for Astoria Entertainment, Inc., Appellant.
Frederick W. Bradley, King Krebs & Jurgens, New Orleans, LA, and Aubrey B. Harwell, Jr., James G. Thomas, Neal & Harwell, PLC, Nashville, TN, for Edward J. DeBartolo, Jr. and DeBartolo Entertainment Louisiana Gaming, Inc., Defendant/Appellees.
Arthur A. Lemann III, Arthur A. Lemann IV, Arthur A. Lemann III & Associates, Inc., New Orleans, LA, and Ralph Capitelli, Capitelli & Wicker, New Orleans, LA, for Defendant/Appellee, Robert J. Guidry.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge JAMES F. McKAY, III).
PER CURIAM.
Plaintiff-appellant, Astoria Entertainment, Inc. ("Astoria"), appeals a summary judgment of September 21, 2006, dismissing its claims against the defendants-appellees, Edward DeBartolo, Jr. and Robert Guidry, referred to hereinafter as "DeBartolo," *834 "Guidry," or collectively as the "appellees," in order to distinguish them from other originally named defendants who are not parties to this appeal.[1]
Astoria filed a petition for damages on December 1, 1998[2], against the appellees, along with numerous other named defendants, asking for damages arising out of the alleged "consequence of the intentional and/or corrupt practices which permeated the riverboat gaming licensing process from 1991 to 1998," as a result of which Astoria was denied a license to operate a Casino. The gravamen of Astoria's argument is that DeBartolo and Guidry corrupted the licensing process by making illegal payments to former Louisiana Governor Edwin Edwards in order to obtain a casino license for a DeBartolo interest, a license that Astoria contends would rightfully have gone to Astoria in the absence of this corruption. More specifically, Astoria, by its original and amending petitions, asserted one or more of the following causes of action against the defendants: (1) intentional interference with economic advantage and or prospective economic advantage; (2) unjust enrichment to the extent that the defendants were unjustly enriched to the detriment and impoverishment of Astoria; (3) civil conspiracy to corrupt the licensing process; (4) punitive damages under California law for fraud; (5) treble damages under the California business code for unfair trade practices; and (6) violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.
By judgment dated February 13, 2004, the trial court denied various exceptions filed by various defendants, including exceptions of no cause of action filed by the appellees herein.
On September 7, 2004, this court granted writ applications filed by the appellees and reversed the trial court's denial of their exception of no cause of action. Astoria v. DeBartolo, No(s). 2004-C-415, 2004-C-417, 2004-C-430, 2004-C-431 (La. App. 4 Cir. 9/7/04), unpub.
This judgment (since vacated by the Supreme Court) was based on what is known as The Noerr-Pennington doctrine which provides immunity from Sherman Act antitrust civil liability for parties who petition the government for favorable government action, even when such petitioning conduct is motivated by anti-competitive intent. Eastern Railroad Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).
The judgment of this Court reversing the trial court was vacated by the Supreme Court based on a finding that the Noerr-Pennington doctrine relied upon by this court in dismissing Astoria's claims sua sponte upon an exception of no cause of action was an affirmative defense not cognizable *835 upon an exception of no cause of action prior to answer. Astoria Entertainment, Inc. v. DeBartolo, et al., 04-2472 (La.1/7/05), 891 So.2d 687.
On remand, the appellees urged the Noerr-Pennington defense in a motion for summary judgment which the trial court granted, dismissing Astoria's claims, based on a finding expressed in its written reasons for judgment that it was bound by this Court's ruling in the aforementioned vacated judgment as to the applicability of Noerr-Pennington. On appeal, the appellees urge that our prior vacated ruling is the law of the case. We disagree. A vacated judgment is of no force or effect, is not the law of the case and has no value as precedent. However, as a matter of law, we again find that the Noerr-Pennington doctrine is dispositive. We stand by the statement made in our previous writ to the effect that Noerr-Pennington is applicable to state claims "regardless of the involvement of bribery or other corrupt activity."
As we find the scope of Noerr-Pennington to be that broad, there is no need to go into the details of the payments made by the appellees to former Governor Edwards. Suffice it to say that regardless of how they are characterized they are immunized by Noerr-Pennington.
As the Supreme Court stated in City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 379-380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991):
The federal antitrust laws also do not regulate the conduct of private individuals in seeking anticompetitive action from the government.
The appellees contend that the payments they made constitute a form of petitioning of the government that is protected by the Noerr-Pennington[3] doctrine. This aspect of Noerr-Pennington is based on the First Amendment right to "petition the government for a redress of grievances." Therefore, it is made applicable in state court and to state law claims through the Fourteenth Amendment. Harrah's Vicksburg Corp. v. Pennebaker, 812 So.2d 163 (Miss.2001). The fact that the Noerr-Pennington doctrine developed in the context of federal antitrust laws does not mean that it does not bar state claims. Titan America, LLC v. Riverton Investment Corp., 264 Va. 292, 569 S.E.2d 57 (Va. 2002); Bayou Fleet, Inc. v. Alexander, 234 F.3d 852 (5th Cir.2000). We therefore can find no legal impediment to the application of Noerr-Pennington to Astoria's state claims.
We find that the following statement made by the Federal District court in a related case is equally applicable to the payments made by the defendants in the instant case:
[T]he criminal conduct alleged can be classified simply as lobbying because the immunity doctrines do not distinguish between "lobbying" and "corruption."
Astoria Entm't, Inc. v. Edwards, 159 F.Supp.2d 303, 324 (E.D.La.2001).
Finally, we are persuaded by the following observations from another related federal court case:
[N]o court applying Louisiana law has ever awarded tort damages for bribery of a public official.

*836 * * *
... Louisiana courts do not generally equate criminal violations with compensable tortious conduct. Only in rare instances do Louisiana courts even treat a criminal violation as clear evidence of a breach of the applicable civil standard of care.
Louisiana v. Guidry, 489 F.3d 692, 703-704 (5th Cir.6/15/07).
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] DeBartolo's brief states that it is filed on behalf of "Edward J. DeBartolo and DeBartolo Entertainment Louisiana Gaming, Inc." However, the judgment below makes no reference to DeBartolo Entertainment Louisiana Gaming, Inc. We do not see where DeBartolo Entertainment Louisiana Gaming, Inc. has appealed or filed an answer to the plaintiff's appeal. Therefore, we do not consider DeBartolo Entertainment Louisiana Gaming, Inc. to be a party to this appeal.
[2] A few days earlier, on November 12, 1998, the plaintiff filed related Sherman antitrust and RICO claims in federal court which were eventually dismissed with prejudice. Astoria Entm't, Inc. v. Edwards, 159 F.Supp.2d 303, 320-321 (E.D.La.2001). While the federal court declined to rule on Astoria's state claims, it dismissed them from federal court without prejudice, thereby preserving Astoria's right to pursue them in state court.
[3] Related to the Noerr-Pennington doctrine is the so-called Parker doctrine arising out of the case of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). This doctrine immunizes state and local governments and state actors from anti-trust claims. This doctrine was invoked by former governor Edwin Edwards in his successful attempt to have the plaintiff's related federal court claims against him dismissed. Astoria Entm't, Inc. v. Edwards, 159 F.Supp.2d 303 (E.D.La.2001).